**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION AT LAFAYETTE**

| | |
|---|---|
| **CHERYL L. SCOTT,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **No. 4:05-CV-55** |
| ) | |
| **WABASH NATIONAL CORPORATION,** ) | |
| ) | |
| **Defendant.** ) | |

**MEMORANDUM, OPINION, & ORDER**

Before this Court is the Motion for Summary Judgment (Docket No. 27) and the

Motion to Strike (Docket No. 45) filed by Defendant Wabash National Corporation

("Wabash" or "Defendant") against Plaintiff Cheryl L. Scott ("Scott" or "Plaintiff"). The

Plaintiff has alleged that Wabash discriminated against her in violation of the American

with Disabilities Act ("ADA") and wrongful termination for filing a worker's

compensation claim in violation of Indiana law. The Court heard oral arguments in

Lafayette, Indiana on April 3, 2007, and the issues have been fully briefed.[1] For the

reasons stated below, the Defendant's motion to strike is granted, and the Defendant's

motion for summary judgment is granted in part and denied in part.

I. Introduction

The Plaintiff has alleged that Wabash discriminated against her in violation of the

---

[1]In a docket entry on April 3, 2007, the Court dismissed Count II of Scott's Complaint
which alleged worker's compensation retaliation.

Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*. (1994), and discharged her employment in retaliation for filing a worker's compensation claim. Scott seeks reinstatement to the last light duty, sit-down position she occupied at Wabash with full back pay and fringe benefits. Scott also seeks compensatory damages for humiliation and pain and suffering, as well as punitive damages from Wabash.

## II.  Jurisdiction and Venue

Jurisdiction is conferred on this Court by 28 U.S.C. § 1331, 42 U.S.C. § 2000e-5(f)(1) and 12117, and 28 U.S.C. § 1367. The Plaintiff's request for declaratory and injunctive relief is authorized by 28 U.S.C. § 2201 and 2202.

Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the Plaintiff is a resident of this district, the Defendant is doing business in this district, and the activities giving rise to the Plaintiff's claims took place in this district.

## III.  Standard of Review

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242 (1986)*; Bragg v. Navistar Int'l Trans. Corp*., 164 F.3d 373 (7th Cir. 1998). After affording the parties adequate time for discovery, a court must grant summary judgment against a party "who fails to make a

2

showing sufficient to establish the existence of an element essential to that party's case, on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The initial burden is on the moving party to demonstrate, "with or without supporting affidavits," the absence of a genuine issue of material fact and that judgment as a matter of law should be granted in the moving party's favor. *Celotex*, 477 U.S. at 324 (quoting FED. R. CIV. P. 56); *Larimer v. Dayton Hudson Corp.*, 137 F.3d 497 (7th Cir. 1998), *reh'g denied*. A question of material fact is a question which will be outcome- determinative of an issue in the case. The Supreme Court has instructed that the facts material in a specific case shall be determined by the substantive law controlling the given case or issue. *Anderson*, 477 U.S. at 248. The moving party may discharge this initial burden by demonstrating that there is insufficient evidence to support the non-moving party's case. *Celotex*, 477 U.S. at 325. The moving party may also choose to support its motion for summary judgment with affidavits and other admissible material, thereby shifting the burden to the nonmoving party to demonstrate that an issue of material fact exists. *Steen,* 2006 WL 335521 at *1 (7th Cir. Feb. 13, 2006); *See Kaszuk v. Bakery & Confectionary Union & Indus. Int'l Pension Fund*, 791 F.2d 548, 558 (7th Cir. 1986); *Bowers v. DeVito*, 686 F.2d 616, 617 (7th Cir. 1982. The nonmoving party cannot rest on its pleadings, *Weicherding v. Riefel,* 160 F.3d 1139 (7th Cir. 1998); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920-21 (7th Cir. 1994); nor may that party rely upon conclusory allegations in affidavits. *Smith v. Shawnee Library* Sys., 60

F.3d 317, 320 (7th Cir. 1995).

During its summary judgment analysis, the court must analyze summary judgment motions under the standard of proof relevant to the case or issue. *Anderson*, 477 U.S. at 252-55. The court must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560 (7th Cir. 1996). However, the plaintiff must do more than raise a "metaphysical doubt" as to the material facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 577 (1986). Rather, she must come forward with "specific facts" showing that there is a genuine issue for trial. *Id.* at 587 (*quoting* FED. R. CIV. P. 56(e)).

IV. <u>Facts</u>

Scott began her employment with Wabash on June 22, 1995. Upon commencing her employment at Wabash, Scott received a copy of Wabash's Hourly Associate Handbook, which contained Wabash's Equal Employment Opportunity Policy, and a copy of Wabash's Disability Policy. (Hardin Decl. at ¶ 3; Hardin Dep. at 18; Scott Dep. at 1-2). In September of 2002, Scott worked at Wabash as a tank builder, an hourly, assembly job.[2] On or about September 5, 2002, Scott injured her right heel while working. Scott visited Wabash's medical department for treatment of that injury on September 9**,** 2002. (*See* Exhibit 1 to Plaintiff's Response at 15). On September 10, 2002, Wabash completed and submitted a Worker's Compensation First Report of Injury form for Scott. (Hardin

---

[2]The tank builder's job required walking and lifting.

Decl. at ¶ 5).

On December 19, 2002, Dr. Steven B. Jones, M.D., diagnosed Scott with Achilles heel tendonitis.  The MRI of her foot and ankle revealed "(1) a small amount of fluid . . . in the pre-Achilles bursa with mild bone bruising in the calcaneal tuberosity; (2) mild tenosynovitis of the peroneal tendons; (3) ganglion cyst or joint fluid bulging from the subtalar joint into the sinus tarsi with an otherwise normal sinus tarsi; and (4) midfoot osteoarthritis as described."  (Exhibit 1 to Plaintiff's Response at 17).

On February 17, 2003, Scott visited a non-company physician, Dr. Terrance Devlin, M.D.  Dr. Devlin prescribed a Bledsoe boot.  On March 19, 2003, Dr. Devlin performed surgery on Scott's ankle, after which Scott was referred to Dr. Michael Shea at Ortho-Indy in Indianapolis, Indiana.  Dr. Shea performed a second surgery on October 7, 2003 to reinforce the tendon. (Exhibit 1 to Plaintiff's Response at 14; Scott Dep. at p. 28, ll. 8-11).

From December 2002 through August 2004, Scott presented Wabash with temporary work restrictions which prevented her from performing her job as a tank builder.  Initially, Scott worked in her manufacturing department performing sedentary work until she was transferred to the Wabash Medical Department's "PX."  While working in the PX, Scott sorted drill bits, completed paperwork, and filed documents.

In March 2003, Wabash created the Transitional Work Center ("TWC"), a department in which employees with temporary work restrictions could perform sedentary

work.  In August of 2004, non-injured work was also reassigned to the TWC, and CTI

workers were added to the department.  Scott began working in the TWC in March 2003.

She worked in the TWC until January 12, 2005.[3]

On August 12, 2004, Scott received permanent restrictions of which Wabash was

notified.  Scott's permanent restrictions stated that she could perform modified duty work

and restricted her to no lifting over ten (10) pounds, no climbing ladders, scaffolds, or

platforms, no stairs, and maximum walking two (2) hours per day, with a maximum of

thirty (30) minutes at one time.  (See Plaintiff's Ex. 6, Ortho-Indy Patient Status Report,

at 2).  Scott remained in the TWC from August 12, 2004 through January 12, 2005

despite the fact that she had received these permanent restrictions.

In January 2005, Scott bid for a job as a fork truck driver.  Wabash informed Scott

that she was the successful bidder on the fork truck driver job, but Scott declined the job

offer.  Scott's employment at Wabash was terminated on January 12, 2005.  Scott filed

her complaint with this Court on August 11, 2005.

V.  Motion to Strike

Before the Court can rule on Defendant's Motion for Summary Judgment, it must

address the Defendant's Motion to Strike (Docket No. 45).  On January 19, 2007,

Defendant filed a motion to strike the second paragraph of Plaintiff's declaration

---

[3]The only times Scott did not work in the TWC from March 2003 through January
2005 was when Scott was on leave of absence or attempting to build up to her previous
tank builder position.

submitted as Exhibit 12 to her summary judgment response.  Defendant contends that in

her summary judgment materials, Plaintiff included a sworn declaration, the second

paragraph of which contradicts her prior deposition testimony.  Motion to Strike at 1

(citing Ex. B to Def.'s Br. in Supp. of Mot. to Strike, Plaintiff's Declaration, ¶ 2).

       According to the Defendant, Scott testified at her deposition regarding a

conversation and meeting she had with Wabash Nurse Misha Leslie in which Scott and

Leslie discussed the opportunity for Scott to bid on the vacant fork truck driver position.

Defendant stated, "Plaintiff never testified in her deposition that she objected to the fork

driver position at any time on the date she bid on the job . . . Plaintiff included a sworn

declaration dated December 18, 2006.  In this declaration, Plaintiff for the first time

claimed that she had, in fact, objected to the fork driver position to Leslie just before she

bid on the job."  (Defendant's Memo. in Support of Motion to Strike at 1-2).  The

Defendant argues that the affidavit should be disregarded because it is in conflict with the

deposition.

       In general, motions to strike are disfavored.  *Williams v. Jader Fuel Co.*, 944 F.2d

1388. 1405-06 (7th Cir. 1991).  As was recently noted in *Redwood v. Dobson*, 476 F.3d

462, 471 (7th Cir. 2007), "motions to strike words, sentences, or sections out of briefs

serve no purpose except to aggravate the opponent – and though that may have been the

goal here, this goal is not one the judicial system will help any litigant achieve.  Motions

to strike disserve the interest of judicial economy.  The aggravation comes at an

unacceptable cost in judicial time." *Cf. Custom Vehicles*, 464 F.3d at 728.  However, it is also "well-settled that a party may not attempt to survive a motion for summary judgment by manufacturing a factual dispute through the submission of an affidavit that contradicts prior deposition testimony." *Amadio v. Ford Motor Co.*, 238 F.3d 919, 926 (7th Cir. 2001).  Therefore, when a "deposition and affidavit are in conflict, the affidavit is to be disregarded unless it is demonstrable that the statement in the deposition is mistaken, perhaps because the question was phrased in a confusing manner or because a lapse of memory is in the circumstances a plausible explanation for the discrepancy." *Id.* (quoting *Russell v. Acme-Evans Co.*, 51 F.3d 64, 67-68 (7th Cir. 1995).

It is clear that Scott's deposition testimony and her declaration are in conflict.  She was asked at the deposition, in a manner that seems sufficiently clear and unambiguous, if she had "ever talk[ed] to anybody at Wabash National about th[e] fork truck job."  (Scott Dep. at 112).  Her answers described only that she did "not want . . . the responsibility [that fork truck drivers] have."   (Scott Dep. at 112-13).  Plaintiff asserts that she did not testify to this fact because she was not asked any questions that would have elicited this testimony.  As such, Plaintiff contends that there is no prior testimony, let alone conflicting prior testimony.

A review of the Plaintiff's deposition in response to this line of questioning demonstrates that the Plaintiff provided complete testimony regarding her conversation and meeting with Leslie in December of 2004.  The Plaintiff has failed to provide an

acceptable explanation for her failure to testify that she objected to the fork truck driver

position at any time on or before she bid on the job.  Consequently, the Court finds that

the second paragraph of Scott's declaration should be disregarded to the extent it conflicts

with her deposition testimony.  *See Russell*, 51 F.3d at 67 (noting that the Seventh Circuit

"has been highly critical of efforts to patch up a party's deposition with [her] own

subsequent affidavit").

VI.  Discussion

Plaintiff has alleged that Wabash: (1) discriminated against her under the ADA;

and (2) that she can recover punitive damages on this claim.  Each of these allegations

will be addressed in turn.

A.  *Discrimination under the ADA*

Scott alleged in her complaint that she was terminated in violation of the ADA.

The ADA prohibits an employer from discrimination "against a qualified individual with

a disability because of the disability of such individual in regard to job application

procedures, the hiring, advancement, or discharge of employees, employee compensation,

job training and other terms, conditions, and privileges of employment."  42 U.S.C. §

12112(a). A plaintiff may prove discrimination in violation of the ADA using one of two

methods.  Under the direct method, a plaintiff may establish unlawful discrimination by

introducing direct or circumstantial evidence of intentional discrimination, including

evidence that the employer relied on the plaintiff's disability in making its employment

9

decision. *See Sylvester v. SOS Children's Vills. Ill., Inc*., 453 F.3d 900, 902-03 (7th Cir. 2006).  Under the indirect burden-shifting approach, a plaintiff must first make out a *prima facie* case of discrimination.  *See generally McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See also Lawson v. CSX Transp., Inc*., 245 F.3d 916, 922 (7th Cir. 2001).  Once the plaintiff has established a *prima facie* case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action.  *Lawson*, 245 F.3d at 922.  If the employer makes that showing, the burden shifts once again to the plaintiff to show the employer's stated reason is simply pretext for discrimination.  *Id*.

Because Scott lacks direct evidence of disability discrimination, she must proceed on the basis of the indirect burden-shifting method of proof outlined above.  To make a *prima facie* case of disability discrimination, a plaintiff must show that: (1) she is disabled within the meaning of the ADA; (2) she is a qualified individual with a disability;[4] (3) she was meeting her employer's legitimate employment expectations; (4) she was subject to an adverse employment action; and (5) similarly situated employees received more favorable treatment.  *Kampmier v. Emeritus Corp*., 472 F.3d 930, 937 (7th Cir. 2007) (citing *Rooney v. Koch Air, LLC*, 410 F.3d 376, 380-81 (7th Cir. 2005)**.**  Both

---

[4]The first two requirements restate the statutory elements specifying that the plaintiff must be a "qualified individual with a disability" in order for the ADA to apply. 42 U.S.C. §§ 12102(2), 12111(8) (defining "disability" as "qualified individual with a disability"); 42 U.S.C. § 12112 (protecting "qualified individual with a disability" from discrimination on the basis of her disability).

parties agree that Scott was meeting Wabash's legitimate employment actions and that she was subject to an adverse employment action. Thus, the parties only dispute the first, second, and fifth prongs of Scott's *prima facie* case.

1. *Disabled Within the Meaning of the ADA*

Defendant first asserts that Scott is not a disabled person protected by the ADA. A plaintiff is considered disabled if she: (1) she has a physical or mental impairment that substantially limits one or more major life activities; (2) has a record of such impairment; or (3) she is regarding as having such an impairment by her employer. 42 U.S.C. § 12102(2)(A). Merely having an impairment does not make one disabled for purposes of the ADA. Claimants also need to demonstrate that the impairment limits a major life activity. See 42 U.S.C. § 12102(2)(A). "Major life activities" refer to activities "that are of central importance to daily life." *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 197 (2002). The HEW Rehabilitation Act regulations provide a list of examples of "major life activities" that includes "walking, seeing, hearing, and performing manual tasks." 45 C.F.R. § 84.3(j)(2)(ii) (2001).

The term "substantially limits" suggests "considerable" or "to a large degree." *Id*. at 196. Thus, "substantially limits" means that Scott is "unable to perform a major life activity that the average person in the general population can perform or is significantly restricted as to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." *Kampmier*, 472 F.3d at

11

937 (citing 29 C.F.R. § 1630.2(j)(l)(I)-(ii).  In making this disability determination, the
court considers "the nature and severity of the impairment, the duration and expected
duration of the impairment, and the permanent or long term impact or the expected
permanent or long term impact of or resulting from the impairment."  29 C.F.R. §
1630.2(j)(2)(I)-(iii); *Furnish v. SVI Sys., Inc.*, 270 F.3d 445, 451 (7th Cir. 2001).

Wabash argues that Scott is not disabled, despite her tendonitis, because she can
"perform the activities of daily living – including bathing, completing some housework,
helping with the dishes, walking, and shopping – during the relevant time."  (Defendant's
Brief in Support at 15) (citing Scott Dep. at pp. 20-21 and 23-26).  Scott contends that,
among other things, she was substantially limited in her ability to walk.  Walking has
been defined as a major life activity. *See*, 45 C.F.R. § 84.3(j)(2)(ii).  The parties' dispute
centers on whether Scott is actually limited in her ability to walk and perform activities of
daily living associated with her inability to walk.

Based on the evidence before it, this Court finds that Scott is substantially limited
in the major life activity of walking.  The medical records support a finding of disability.
Scott reached her maximum medical improvement on August 12, 2004.  At that time, Dr.
Shea assigned Scott a Permanent Partial Impairment rating of eight percent (8%) of her
whole person, nineteen percent (19%) of her lower extremity, and twenty-seven percent (27%) of
her right foot and ankle.  (*See* Plaintiff's Exhibit 15, Dr. Shea Office Note, at 1).
Moreover, Scott's permanent restrictions stated that she could perform modified duty

12

work and restricted her to no lifting over ten (10) pounds, no climbing ladders, scaffolds, or platforms, no stairs, and maximum walking two (2) hours per day, with a maximum of thirty (30) minutes at one time.  (See Plaintiff's Ex. 6, Ortho-Indy Patient Status Report, at 2).

Scott has also offered evidence that the extent of the limitation caused by her impairment in terms of her own experience is substantial.  *Toyota Motor Mfg. Kentucky, Inc.*, 534 U.S. at 198.  Scott stated that she is substantially limited in the following ways:

(a) she can walk at most one-half block at a time, cannot stand or walk more than two hours in a day, and cannot stand or walk for more than twenty minutes at a time;

(b) cannot walk from her house to the mailbox at the end of her driveway;

(c) she cannot climb ladders, scaffolds or stairs, including the steps that lead to the front door of her house;

(d) she cannot do a full grocery shop – her husband performs this task while Ms. Scott rides in a motorized cart;

(e) she cannot do the laundry, except for folding the dried clothes while sitting down;

(f) she can no longer cleans [*sic*] her house – her husband now vacuums, cleans the tub, toilet and floors and makes the bed;

(g) she can now wash only a few dishes at most – another household chore her husband has assumed since the Scott's do not have a dishwasher;

(h) she can now only do minimal cooking that can be done sitting down;

(i) she must sit on a stool while taking a shower because standing causes her foot to curl up;

(j) the Scott's installed a handicap rail to aid Ms. Scott in getting in and out of the shower;

(k) and she is unable to drive or engage in enjoyable activities such as bowling.

Plaintiff's Response at 12-13 (citing Scott Dep., pp. 6, 17, 20-26, 35-39, 171-72, 182).

Construing all disputed facts in Scott's favor, the Court finds that she has presented sufficient evidence concerning her ability to walk that a reasonable jury could conclude that she has a physical impairment and that Scott's physical disabilities "substantially limit" her ability to walk and perform activities of daily living associated with her inability to walk.   Therefore, a genuine issue of material fact exists as to whether Scott was a disabled for purposes of the ADA.

## 2. *Qualified Individual with a Disability*

Scott must also establish that she is a "qualified individual with a disability."  42 U.S.C. §12112(a).[5]  A qualified individual with a disability is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. §12112(8).   Reasonable accommodations may include "job restructuring, part-time or modified work schedules, [or] reassignment to a vacant position."  42 U.S.C. § 12111(9).

---

[5]Scott has the burden of establishing that she is "a qualified individual with a disability."  *Koshinski v. Decatur Foundry, Inc*., 177 F.3d 599, 602 (7th Cir. 1999) (citing *Ross v. Indiana State Teacher's Ass'n Ins. Trust*, 159 F.3d 1001, 1013 (7th Cir. 1998).

14

Wabash contends that Scott desires a position in the TWC and wants Wabash to carve out an exception to its requirement that such positions be held by associates with temporary work restrictions.  Because Scott has permanent work restrictions, Wabash asserts that Scott is unable to meet the requirements for the position that she desires.  Wabash stated that if it "permitted associates to remain in the TWC permanently, it could no longer have work available for its temporarily injured associates, thus defeating the key purpose for which the TWC was established . . . this requirement is a uniform policy that is applied in a nondiscriminatory manner.  Indeed, Wabash has never allowed any associate to remain in the TWC indefinitely."  (Defendant's Memo. in Support at 15-16) (emphasis and internal citations omitted).

Scott asserts that the only evidence that the TWC is exclusively for temporary workers is its own testimony, which is disputed.  Scott asserts that providing sedentary work for temporarily injured associates was only one purpose for the creation of the TWC; Scott contends that the TWC was also created to "increase efficiency and maximize profits by redeploying associates elsewhere on the production line." (Plaintiff's Response at 15).  Scott argues that beginning in August 2004, the TWC "stopped being just a 'transitional' work center for temporarily injured associates and became a 'pre-assembly' department that consisted of some sedentary work and some non-sedentary work."  (*Id*).

Scott also argues that "[d]espite Defendant's written policies regarding the TWC,

all injured associates are assigned to the TWC for an indefinite period of time." *(Id.* at

16).   In support of her contentions, Scott stated that she worked in the TWC from March

of 2003 and reported to that department until January 12, 2005; it is undisputed that she

reported to work in the TWC for almost two years and that she worked in the TWC for

five months after receiving her release to work with permanent restrictions on August 12,

2004. *(Id.* at 16-17) (citing Plaintiff's Ex. 3, Medical Records; Plaintiff's Ex. 4, Summary

of Individuals' Dates and TWC Daily Attendance Lists; Scott Dep. at 163; Plaintiff's

Exhibit 6).  Additionally, Scott cited Blankman's testimony that if she had been

permanently placed in the TWC, her work would have complied with her permanent

restrictions and that there was work available in the TWC at the time of her termination.

Based on the record before it, the Court finds that there are several genuine issues

of material fact precluding summary judgment on this issue.  There are questions of fact

as to whether, at the time of Scott's termination, another vacant job existed that Scott was

qualified to perform with or without accommodation, the physical demands of the fork

truck driver position, and whether Scott was qualified to perform the fork truck driver

position.  There is a question of fact as to whether Mike Rardon had work available for a

"Dispatcher for PX Deliveries–Answering Phones, Data Entry."  There is also a genuine

issue of material fact regarding whether Wabash would have suffered undue hardship if it

had permanently placed Scott in the TWC.

3.    *Similarly Situated Nondisabled Individuals*

16

Wabash argues that it is entitled to summary judgment on Scott's discrimination claim because Scott has failed to present evidence that any similarly situated nondisabled employees received treatment more favorable than Scott.  According to Wabash, Scott admitted that Wabash "treated her just like it treats any other associate with permanent restrictions by convening a meeting in an attempt to locate a job which fit within her restrictions."  (Defendant's Memo. in Support at 16) (citing Hardin Decl. at ¶¶ 7-8 and Exhibit B thereto; Hardin Dep., pp. 89, 114-17; Scott Dep. pp. 73-74).  Wabash also stated that Scott has not "identified anyone with permanent restrictions whom Wabash National retained despite being unable to locate an appropriate position for them . . . [and Scott] concedes that no Wabash National associate has been permitted to stay in the TWC after receiving permanent restrictions."  (Defendant's Memo. in Support at 16-17) (citing Hardin Dep. at pp. 60-61; Scott Dep. at pp. 66, 69, 121, 161-62; Blankman Dep. at pp. 49, 81).  Scott contends the CTI workers in the TWC are the only available similarly-situated non-disabled comparators.  Scott claims that she was treated differently than at least one individual whom she claims was similarly situated: Donna Ehler.  Scott stated that CTI workers, like Ehler, are indefinitely assigned to the TWC department and that Ehler has worked full-time for over two years in the TWC.

To be "similarly situated," Scott must show that her "performance, qualifications, and conduct were comparable to the . . . [nondisabled employees] in 'all material respects.'" *Dandy v. United Parcel Service, Inc.*, 388 F.3d 263, 274 (7th Cir. 2004).  In

making this determination, the Court must "look at all relevant factors, the number of which depends on the context of the case." *Radue v. Kimberly-Clark Corp*., 219 F.3d 612, 617 (7th Cir. 2000). "Broad-brushed, conclusory allegations" are not sufficient to show that nonprotected employees are similarly situated. *Scaife v. Cook County*, 446 F.3d 735, 740 (7th Cir. 2006). Rather, comparative evidence allowing the Court to make a reliable analysis is necessary. *Dandy*, 388 F.3d at 274.

Scott's *prima facie* burden "is not onerous," and the question on summary judgment is whether Scott has raised an issue of fact on this element. *Kahn v. U.S. Sec'y of Labor*, 64 F.3d 271, 277 (7th Cir. 1995). Scott has clearly done so. Accordingly, the Court holds that a reasonable jury could find that Scott can demonstrate a *prima facie* case of discrimination under the indirect method.

> 4. *Wabash's Proffer of a Nondiscriminatory Reason for Termination and Scott's Pretext Argument*

"If an ADA plaintiff establishes a *prima facie* case, the burden shifts to the employer to offer a legitimate nondiscriminatory reason for the employment decision." *Nese v. Julian Nordic Constr. Co.*, 405 F.3d 638, 641 (7th Cir. 2005). There is little doubt that Wabash can offer a legitimate, non-discriminatory reason for terminating Scott. According to Wabash, upon learning that she was the successful bidder for the fork truck driver job, Scott declined to even try it, claiming that she was afraid the new job may cause her to re-injure her foot. Because Wabash allegedly had no other vacant, permanent positions which were consistent with Scott's work restrictions, it separated her

18

employment.

Having articulated a legitimate, non-discriminatory reason for terminating Scott, the burden reverts to Scott to show that there is a "genuine dispute of material fact that the proffered reason for the employment action is pre-textual." *Id*.  A plaintiff can establish pretext by showing that the employer's explanation is unworthy of credence or that a discriminatory reason more likely motivated the employer. *Debs v. Northwestern Illinois Univ.*, 153 F.3d 390, 395 (7th Cir. 1998).  If Scott "offers specific evidence from which the finder of fact may reasonably infer that the proffered reasons do not represent the truth, the case then turns on the credibility of the witnesses." *Gordon v. United Airlines, Inc.,* 246 F.3d 878, 889 (7th Cir. 2001) (quoting *Collier v. Budd Co.*, 66 F.3d 886, 893 (7th Cir. 1995)).

Scott asserts that Wabash's explanation for her termination is merely a pretext for discrimination.  Specifically, Scott contends that there are questions of fact as to whether Wabash ignored a vacant dispatcher job in the PX that clearly met Scott's restrictions in favor of a fork truck driver position that may or may not have met Scott's restrictions and whether Scott was qualified to perform the essential functions of the TWC job in the TWC department.

The Court will not render summary judgment "if a reasonable jury could return a verdict for the nonmoving party." *Sullivan v. Cox*, 78 F.3d 322, 325 (7th Cir. 1996) (citing *Anderson*, 447 U.S. at 248).  This summary judgment standard is to be applied rigorously

where intent and credibility are central issues. *Wohl v. Spectrum Manufacturing*, 94 F.3d 353, 354 (7th Cir. 1996). Here, Scott has presented sufficient evidence of pretext to survive summary judgment. The same evidence that satisfied the similarly situated element also creates a triable issue of pretext. Based on the evidence regarding whether there was a permanent job in the PX and whether Scott could and was qualified to work in the TWC, a reasonable jury could conclude that Wabash's proffered reasons for terminating Scott were pretextual. Accordingly, Scott has established a genuine issue of material fact as to pretext. Scott is entitled to a jury determination of her disability discrimination claim.

   B. <u>Punitive Damages</u>

   Wabash contends that Scott cannot obtain punitive damages in this case. To demonstrate that she is entitled to receive punitive damages, the Scott must establish that Wabash acted "in the face of a perceived risk that its actions will violate federal law." *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 536 (1999). This may be satisfied by showing that Wabash "acted with disregard of [Scott's] federally protected rights . . . ." *Bruso v. United Airlines, Inc*., 239 F.3d 848, 857-60 (7th Cir. 2001). Once a plaintiff establishes that the employer or its employees acted in reckless disregard of the plaintiff's federally protected rights, the plaintiff must demonstrate a basis for imputing liability to the employer. *Kolstad*, 527 U.S. at 539. A plaintiff may establish a basis for imputing liability by showing "the employees who discriminated against [the plaintiff] are

20

managerial agents acting within the scope of their employment." *Bruso*, 239 F.3d at 858 (citing *Kolstad*, 527 U.S. at 539). Nevertheless, the employer "may avoid liability for punitive damages if it can show that it engaged in good faith efforts to implement an antidiscrimination policy." *Id*.

Here, even if Scott is able to establish the requisite malice or reckless indifference, and even if liability could be imputed to Wabash, there exists uncontroverted evidence that Wabash engaged in good faith efforts to implement an antidiscrimination policy. (See Scott Dep. at 135-36). Wabash implemented and enforces a written policy prohibiting its employees from engaging in discriminatory conduct – this evidences good faith and not malice on the part of Wabash. Accordingly, Scott's punitive damages claim is DISMISSED.

VII.  Conclusion

Based on the foregoing, Wabash's Motion to Strike (Docket No. 45) is **GRANTED**. Wabash's Motion for Summary Judgment (Docket No. 27) is **GRANTED in part** and **DENIED in part**. Scott's claim for punitive damages is dismissed, and the clerk is ordered to enter judgment in favor of Wabash on that claim upon disposition of all remaining claims.[6] Scott's discrimination claim remains pending for a jury's consideration. The final pretrial conference scheduled for Friday, May 11, 2007 in

---

[6]As this Order does not dispose of all claims, it does not constitute a final judgment.

21

Lafayette, Indiana will go forth as scheduled.  The Court will address the Defendant's First Motion to Continue May 29, 2007 Trial Date (Docket No. 69), Supplemental Motion to Continue May 29, 2007 Trial Date (Docket No. 71), and the Plaintiff's Motion for Brief Extension (Docket No. 73) at the final pretrial conference.

**SO ORDERED.**

**DATED: May   10   , 2007**

                                        **s/ Allen Sharp**
                                        **ALLEN SHARP, JUDGE**
                                        **UNITED STATES DISTRICT COURT**

22